Case 12-28413    Filed 05/10/12    Doc 21

FILED
May 10, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004228167

9

Gregory M. Weinstein
**LANGLEY WEINSTEIN LLP**
901 Main Street, Suite 600
Dallas, Texas 75202
gweinstein@lwllp.com
Telephone:    214-722-7160
Facsimile:    214-722-7161

**SALAMIRAD MORROW P.C.**
Michael J. Timpane, Bar No. 115238
Laurie Svitenko, Bar No. 203289
101 California Street, Suite 2450
San Francisco, California  94111
Telephone:    (415) 946-8991
Facsimile:    (415) 946-8993
mt@salamiradmorrow.com

Attorneys for
THE GUARANTEE COMPANY
OF NORTH AMERICA, USA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br>F. Rodgers Corporation,<br>        Debtor, | CASE NO. 12-28413<br><br>DC NO.: GDW-001<br><br>Chapter 7 |
| The Guarantee Company of North America, USA,<br><br>        Movant,<br><br>    v.<br><br>F. Rodgers Corporation, Debtor, and Michael D. McGranahan, Trustee,<br><br>        Respondents. | **EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>**Date:**  May 21, 2012<br>**Time:**  10:00 a.m.<br>**Place:** Sacramento Division<br>        501 I Street, 7th Floor<br>        Sacramento, CA 95814<br>        Courtroom 28<br>**Judge:** Michael S. McManus |

1

**EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE MICHAEL S. MCMANUS, U.S. BANKRUPTCY JUDGE, THE DEBTOR, THE DEBTOR'S COUNSEL, THE CHAPTER 7 TRUSTEE, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

COMES NOW The Guarantee Company of North America, USA (the "Surety") and files this, its Emergency Motion for Relief from the Automatic Stay (the "Motion") in the above-captioned Chapter 7 case, and would respectfully show this Court as follows:

### I.
### JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334, and this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

This motion is made on an emergency basis pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(2) on the grounds that the Surety will suffer immediate and irreparable loss if the Motion were heard on normal notice pursuant to Local Bankruptcy Rule 9014-1(f)(1).

### II.
### FACTS

On April 30, 2012 (the "Petition Date"), F. Rodgers Corporation (the "Debtor") filed a petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 110-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of California, Sacramento Division.

The Debtor was engaged in the business of roof installation and insulation and, prior to ceasing business operations on or about March 20, 2012, was actively engaged as a general contractor or subcontractor on over two thousand bonded and unbonded projects in the States of California, Oregon, Washington and Nevada. *See Declaration in Support of Emergency Motion for Relief from Stay* by

Jeffery Jubera ("Jubera Declaration"), a true and correct copy of which is attached hereto as Exhibit "A" and expressly incorporated by reference herein for all purposes, at ¶ 4.

The Surety issued performance bonds (collectively, the "Bonds") on behalf of the Debtor in connection with certain projects (the "Projects") described in Exhibit "A-1". Jubera Declaration at ¶ 5, Ex. "A-1".

The Surety issued the Bonds in consideration of the Debtor's execution and delivery to the Surety of that certain *General Agreement of Indemnity* (the "Indemnity Agreement") on or about August 20, 2006, pursuant to which the Debtor agreed to, among other things, "indemnify [the Surety] and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursement, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which [the Surety] may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making investigation of any matter concerning any BOND OR BONDS, or by prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement." Jubera Declaration at ¶ 6, Ex. "A-2".

Pursuant to the Indemnity Agreement, the Debtor also assigned to the Surety as collateral security, among other assets, the bonded contract proceeds. Jubera Declaration at ¶ 7, Ex. "A-2".

On or about March 20, 2012, representatives of the Debtor informed the Surety that Wells Fargo Bank had seized all of its assets and swept its bank accounts, which effectively caused the Debtor to cease all business operations, including performance on the Projects. Jubera Declaration at ¶ 8. Subsequently, the Debtor defaulted[1] on its contractual obligations on the following bonded projects (the "Defaulted Projects") described in Exhibit "A-1," resulting in claims being asserted against the Bonds: Nos. 6, 7, 9, 10, 14, 15, 19, 20, 21, 22, 23, 24, 25, and 37. Jubera Declaration at ¶ 9.

---

[1] The Debtor was not terminated on any of the Defaulted Projects. Jubera Declaration at ¶ 9.

Prior to the Petition Date, the Surety was in the process of executing agreements with obligees on the Bonds to facilitate the completion of the Debtor's scope of work on the Defaulted Projects. Jubera Declaration at ¶ 10. As of the Petition Date, the Surety has suspended any such activities due to the imposition of the automatic stay pursuant to 11 U.S.C. § 362(a). Jubera Declaration at ¶ 10.

Due to the Debtor's prepetition default on the Defaulted Projects, and the inevitability of the Debtor's default on the remaining Projects due to the Debtor's cessation of business operations, the Surety faces significant exposure under the Bonds. Jubera Declaration at ¶ 11. As of the Petition Date, the Surety had incurred $166,212 in actual losses under the Bonds.[2] Jubera Declaration at ¶ 11. The Surety had also received $1,844,571.16 in claims against payment and commercial line bonds issued on behalf of the Debtor. Jubera Declaration at ¶ 11. Based on the pending payment and commercial line bond claims as well as the demands the Surety has received against the performance bonds to complete the open projects (including the projects identified below as "Emergency Projects"), the projected loss of the Surety will likely exceed $1,500,000. Jubera Declaration at ¶ 11.

The Surety requests relief from the automatic stay to enable the Surety to enter into agreements with the obligees on the Projects and/or to undertake other efforts to facilitate completion of the Projects, thereby mitigating the Surety's losses under the Bonds and adequately protecting the Surety's interest in the contract balances on the Projects (the "Contract Balances"). Jubera Declaration at ¶ 12.

The Surety requests emergency relief from the automatic stay with respect to the following projects (the "Emergency Projects") described in Exhibit "A-1" where time is of the essence for their completion: Nos. 4, 9, 10, 12, 15, 17, and 21. Jubera Declaration at ¶ 13. Based on the Surety's initial

---

[2] The Surety's computation of actual loss is made expressly for the purposes of this Motion and does not in any way limit the value of the Surety's prepetition claim against the Estate, nor does it preclude the Surety from claiming additional loss in any proof of claim filed by the Surety. The Surety expressly reserves all rights accruing to it as surety or otherwise, and the filing of this Motion is not intended to be and shall not be construed as: (a) an election of rights or remedies; (b) a waiver of any past, present or future event of default on the part of the Debtor or any other person; or (c) a waiver or limitation of any rights of the Surety.

investigation on the status of completion of these eight (8) projects, the Surety has determined that the Debtor's scope of work requires immediate attention to prevent unnecessary delays on the Emergency Projects. These delays will not only impact the ability of other trades to perform their work in a timely manner, but will also subject the Surety to liquidated and other delay type damages.

The Surety also seeks relief from the automatic stay with respect to the other projects described in Exhibit "A-1" that are not as critically time-sensitive as the Emergency Projects (the "Non-Emergency Projects"). Jubera Declaration at ¶ 14.

Upon receiving relief from the automatic stay with respect to the Projects, the Surety agrees to keep the Chapter 7 Trustee reasonably informed regarding the status of the Projects, including any recovery therefrom. Jubera Declaration at ¶ 17. In the unlikely event that the Surety receives contract proceeds or other recovery on the Projects in excess of all amounts due to the Surety by the Debtor, the Surety will remit the excess portion to the Debtor's Estate or as directed by this Court. Jubera Declaration at ¶ 17.

### III.
### BASIS FOR RELIEF

The Surety is entitled to relief from the automatic stay because, pursuant to 11 U.S.C. § 362(d)(2), the Debtor has no equity in the Contract Balances and they are not necessary for reorganization in a Chapter 7 liquidation. Additionally, and alternatively, the Surety is entitled to relief from the automatic stay because "cause" exists to lift the stay pursuant to 11 U.S.C. § 362(d)(1).

**A.   *The Automatic Stay Should be Lifted Because the Debtor Lacks Equity in the Contract Balances and the Contract Balances are not Necessary for Reorganization in this Chapter 7 Liquidation***

The Bankruptcy Code mandates that the Court grant relief from the stay of an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

As this is a Chapter 7 liquidation, the Contract Balances are not "necessary to an effective reorganization," and thus the only remaining consideration in this Court's analysis of whether to lift the stay is whether the Debtor has any equity in the Contract Balances. 11 U.S.C. § 362(d)(2).

The Debtor lacks equity in the Contract Balances because the Contract Balances are not property of the Estate under well-established equitable and contractual principles. *See American States Ins. Co. v. United States*, 324 B.R. 600, 605 (N.D. Tex. 2005). The United States Supreme Court has unequivocally recognized that "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. This rule . . . [is] generally known as the right of subrogation." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136-37 (1962). Even without a contractual promise from the debtor, the surety who is called to perform is equitably entitled to receive contract balances. *See id*.

Here, the Surety's entitlement to the contract balances is both contractual and equitable, as the Debtor has expressly pledged the Contract Balances to the Surety pursuant to the Indemnity Agreement. *Id.* (noting that even without a contractual promise such as the *Pearlman* surety had from the debtor (and such as The Guarantee Company of North America has from the Debtor) the surety would still be deemed entitled to reimbursement); *In re Jones Constr. & Renovation, Inc.*, 337 B.R. 579, 587 (Bankr. E.D. Va. 2006) (holding that the debtor's right to contract balances, which it assigned to the surety in the indemnity agreement, became vested in the surety upon the event of default, and hence never became property of the estate); Jubera Declaration at ¶ 7. As a result, the Surety's superior interest prevents the Contract Balances from becoming property of the Estate and the Debtor accordingly has no equity in the Contract Balances. As Section 362(d)(2) is satisfied, the Court should grant the Surety relief from the automatic stay to facilitate completion of the Projects.

**B.     "Cause" Exists to Lift the Automatic Stay Because the Surety's Interest in the Contract Balances is not Adequately Protected**

**EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Section 362(d) of the Bankruptcy Code also provides that "the court shall grant relief from the stay provided under [Section 362(a)] . . . by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

The Surety's interest in the Contract Balances is not adequately protected because the Debtor has defaulted on the Defaulted Projects and, due to its cessation of business operations, it will default on the remaining Projects. Jubera Declaration at ¶ 15. Any unmitigated default by the Debtor will result in a reduction, if not a complete elimination, of any Contract Balances available to the Surety as compensation for its losses under the Bonds. Jubera Declaration at ¶ 15. Prepetition, the Surety was already engaged in negotiating agreements to facilitate the completion of the Debtor's scope of work on the Defaulted Projects and mitigate the Surety's loss. Jubera Declaration at ¶ 10. Lifting the automatic stay to allow the Surety to facilitate completion of the Debtor's work on the Projects will mitigate the Surety's losses under the Bonds and provide adequate protection to the Surety's interest in the Contract Balances. Jubera Declaration at ¶ 16.

Section 361 authorizes the Court to grant any relief "as will result in the realization [by the entity lacking adequate protection] of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3). Granting the Surety relief from the automatic stay to facilitate completion of the Projects will allow the Surety to realize its equivalent interest in the Contract Balances and is well within the Court's authority pursuant to 11 U.S.C. § 361.

Accordingly, the Surety requests that this Court enter an Order providing relief from the automatic stay and allow the Surety to exercise its rights and remedies to facilitate completion of the Projects, and thereafter apply the Contract Balances against the indebtedness by the Debtor to the Surety.

At a minimum, the Surety requests that this Court enter an Order providing emergency relief from the automatic stay with respect to the Emergency Projects.

C. **_Emergency Relief is Warranted under Rule 4001(a)(2)_**

The Surety requests emergency relief from the automatic stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(2) on the grounds that the Surety will suffer immediate and irreparable loss if the Motion were heard on normal notice. The next available hearing date on 14-days notice pursuant to Local Bankruptcy Rule 9014-1(f)(2) is May 21, 2012. If the instant Motion was heard on May 21, 2012, damages would accrue as a result of the Debtor's default on the Defaulted Projects and, accordingly, the Surety will suffer irreparable loss in the form of diminution of its Contract Balances. Additionally, the risk of the Debtor's default on the other Projects materially increases with each day that passes, also constituting a threat of irreparable harm to the Surety.

### IV.
### CONCLUSION

FOR THE REASONS SET FORTH ABOVE, the Surety respectfully requests that the Court enter an Order providing: (1) relief from the automatic stay so that the Surety may exercise its rights to facilitate completion of the Projects, including collecting and applying the Contract Balances against the indebtedness by the Debtor to the Surety; and (ii) any such other and further relief as the Court deems appropriate.

Dated: May 10, 2012

Respectfully submitted,

By: /s/ Gregory M. Weinstein
**LANGLEY WEINSTEIN LLP**
Gregory M. Weinstein
*(Admission pending)*
TX Bar No. 21096430
901 Main Street
Dallas, Texas 75202
Telephone:  (214) 722-7160
Facsimile:  (214) 722-7161
gweinstein@lwllp.com

**SALAMIRAD MORROW P.C.**
Michael J. Timpane, Bar No. 115238
Laurie Svitenko, Bar No. 203289
101 California Street, Suite 2450
San Francisco, California  94111
Telephone:  (415) 946-8991
Facsimile: (415) 946-8993
mt@salamiradmorrow.com

ATTORNEYS FOR THE GUARANTEE
COMPANY OF NORTH AMERICA, USA

### CERTIFICATE OF CONFERENCE

The following counsel of record received a copy of the Motion and, on May 8, 2012, informed us that he does not oppose the relief sought herein:

Eric A. Nyberg
KORNFIELD, PAUL & NYBERG, PC
1970 Broadway
Suite 225
Oakland, CA 94612

/s/ Gregory M. Weinstein
Gregory M. Weinstein