Gregory J. Hughes #071288
Christopher D. Hughes #254864
**HUGHES LAW CORPORATION**
3017 Douglas Boulevard, Suite 300
Roseville, California 95661
Telephone: (916) 774-7506
Facsimile: (916) 791-1644
Email: hughes@hugheslc.com

Attorneys for Michael D. McGranahan,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re | ) |
| | ) |
| F. RODGERS CORPORATION, | ) Case No.: 12-28413-A-7 |
| | ) |
| Debtor. | ) |
| | ) |
| MICHAEL D. McGRANAHAN, CHAPTER 7 | ) |
| TRUSTEE | ) Adv. Pro. No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT FOR AVOIDANCE OF** |
| | ) **FRAUDULENT TRANSFERS,** |
| BEAR PROPERTIES LLC; GE | ) **AVOIDANCE OF POST-PETITION** |
| COMMERCIAL FINANCE BUSINESS | ) **TRANSFERS, TURNOVER, AND** |
| PROPERTY CORPORATION and | ) **RECOVERY OF AVOIDED TRANSFERS** |
| GENERAL ELECTRIC CREDIT EQUITIES | ) |
| INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

– 1

Plaintiff Michael D. McGranahan, Chapter 7 Trustee, alleges:

**JURISDICTION AND GENERAL ALLEGATIONS**

1.      Jurisdiction of this Court over the instant adversary proceeding is based on 28 U.S.C. §§ 157 and 1334.  This proceeding arises in and relates to the Chapter 7 bankruptcy case of F. Rodgers Corporation ("Debtor"), Case No. 12-28413-A-7, now pending in this Court.

2.      This adversary proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, 11 U.S.C. §§ 362, 548, 549 and 550 and 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409.

3.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (E), (H), and/or (O).

4.      On April 30, 2012, Debtor filed its Chapter 7 petition in this Court, Case No. 12-28413-A-7.  Plaintiff Michael D. McGranahan ("Plaintiff") was appointed trustee for the case of Frank Rodgers Corporation, and is suing the above-captioned Defendants in that capacity.

5.      Plaintiff is informed and believes that Bear Properties LLC ("Defendant Bear") is a limited liability company which is no longer authorized to do business in the state of California.

6.      Plaintiff is informed and believes that Defendants GE Commercial Finance Business Property Corporation ("GE")  and General Electric Credit Equities Inc. ("General Electric") are corporations licensed to do business in the State of California,

7.      On February 9, 2006, Debtor F. Rodgers Corp. ("FRC") entered into an "Agreement of Purchase and Sale" ("Original Agreement") with Livermore NBP, LLC ("Seller") to acquire certain property located at 7901 National Drive, Livermore, CA  "(the Property").

8.      The total purchase price for the Property was stated in the Original Agreement to be $5,898,518, and FRC was required to make two deposits of $600,000 each prior to certain dates.  At the time of the Original Agreement, the property consisted of land only.  The Original Agreement contemplated the construction of a 20,000 square foot Shell Building, for a cost of $2,428,332, at Seller's expense.  In addition, Seller agreed to construct certain office

///

improvements, on the basis of plans to be approved by FRC, with FRC to pay all costs in excess of $945,000, plus a fee for Seller to manage the construction of the office improvements.

9.      In September, 2006, Seller and FRC executed the "First Amendment to Purchase Agreement," revising the purchase price upward to $5,009,556.

10.      On January 9, 2007, Seller and FRC executed the "Second Amendment to Purchase Agreement", increasing the size of the Shell Building from 20,000 square feet to 30,000 square feet, and increasing the purchase price to $8,980,842.  In addition, the total required deposit was increased to $1,800,000.

11.      In June, 2008, Seller and FRC entered into the "Third Amendment to Purchase Agreement" which confirmed that the Office Improvements and Building Shell were "substantially complete," and modified the closing date to July 31, 2008.

12.      At some point between the execution of the Original Agreement and the closing of escrow on the Property, FRC purportedly assigned the Original Agreement to Bear Properties LLC, ("Bear") a limited liability company owned wholly by Frank Rodgers ("Rodgers").  The assignment was accomplished by means of an Assignment of Purchase and Sale Agreement ("Assignment") signed by Rodgers and Maylin Dittmore on behalf of FRC, and by Rodgers on behalf of Bear.  The Assignment was dated as of February 10, 2006, but the First, Second and Third Amendments to Purchase Agreement were all executed by FRC as buyer after February 10, 2006, and contained no reference to an assignment of FRC's rights under the Original Agreement.  Plaintiff is informed and believes, and thereupon alleges, that no consideration was paid by Bear for the Assignment.

13.      Bear is an insider of FRC, within the meaning of 11 U.S.C. §101(31).

14.      In 2008, Rodgers directed Matt Warner, CFO of FRC, to obtain a loan to fund the balance that would be owed in order to close escrow on the purchase of the Property.  On or about April 23, 2008, Defendant GE sent Mr. Warner a loan proposal for a 25-year loan to an entity to be formed by Frank Roger.  The loan amount, which could have been as high as $8,000,000, was based on a formula that would be sufficient to cover the balance necessary to close escrow.  The proposal required FRC to execute a lease for the Property, for a term not less

than the term of the loan, in an amount sufficient to cover the annual debt service on a 1.15 to 1.0 basis, assuming a triple net lease.  The proposal also required maintenance of certain financial covenants by FRC, to be defined in the course of negotiating and underwriting the specific terms of the loan, and payment of a deposit of 1% of the estimated loan amount if the proposal was accepted.

15.     On April 25, 2008, on behalf of Bear, Rodgers accepted the loan proposal from GE, and caused Bear to send GE a check for $80,000, drawn on Bear's bank account.  The check from Bear was funded by a check for $82,000 paid by FRC to Bear.

16.     On June 23, 2008, GE issued a commitment ("the GE Commitment") for the mortgage financing on the Livermore Headquarters in the amount of $6,460,000.  The GE Commitment incorporated most of the terms of the April 23, 2008 proposal, but required a 22 year loan repayment, with 22 year amortization.  Additionally, the GE Commitment increased the projected interest rate from 7.52%  to 8.51% per annum, and modified the terms of the personal guarantee by Rodgers.

17.     Rodgers accepted the GE Commitment on behalf of Bear on June 23, 2008, and sent GE a $64,600 check, drawn on Bear's bank account, to lock in the interest rate.  The check from Bear was funded by a check for $65,000 to Bear from FRC.

18.     In accordance with the April 23, 2008 Proposal from GE, as incorporated by the GE Commitment, on July 16, 2008, FRC and Bear entered into a "Lease Agreement," pursuant to which FRC leased the Property from Bear on a triple net basis for a period of 22 years, with rents starting at $60,000 per month.

19.     On July 31, 2008, the purchase of the Property was completed, and a deed transferring the Property to Bear was recorded on August 1, 2008 in Alameda County.  The total purchase price was $9,128,140.  FRC paid $1,800,000 in escrow deposits, $144,600 in payments to GE through Bear, and $789,892 at closing which FRC wired into escrow.

20.     The balance of the purchase price was funded by the loan from GE to Bear in the amount of $6,460,000, secured by the Property and a partial personal guaranty by Rodgers.  The monthly payments on the loan were initially in the amount of $54,616.13.

- 4

21.    In addition to amounts paid through escrow and to GE, in May, 2006, FRC paid $69,036 to Bear, which in turn paid $69,036 to Harvest Properties for tenant improvements to the Property.

22.    Also on July 31, 2008, Bear, FRC, and GE entered into a "Subordination, Attornment and Lessee-Lessor Estoppel Agreement" by which FRC agreed that it would not modify or terminate the triple net lease between itself and Bear.  This agreement effectively guaranteed that FRC would provide the funds necessary to make all of the monthly payments on the GE loan, for the entire period of the loan.  Rodgers signed the agreement as both CEO of FRC, and as Manager of Bear.

23.    As a result of the transactions and events alleged in paragraphs 14-21 hereof, FRC paid at least $2,803,527.98 in connection with the acquisition of the Property, consisting of $600,000, $600,000, $600,000 and $789,891.98 paid into escrow, $80,000 and $64,600 paid to GE via payments to Bear, and $69,036 paid to Harvest Properties via a payment to Bear.

24.    As a result of the payments summarized in paragraph 23 hereof, FRC acquired an interest in the Property when escrow closed.  However, as a result of documents signed by Rodgers on behalf of FRC, title to the Property was taken in the name of Bear.

25.    Having paid $2,803,527.98 in connection with the acquisition of the Property, and having agreed to pay the ongoing monthly loan service against the Property by means of purported lease payments to Bear, FRC became the equitable owner of the Property.

26.    By virtue of the provisions of 11 U.S.C. § 544(a)(1), Plaintiff has the rights and powers, including the rights and powers to avoid any transfer of property of FRC or any obligation incurred by FRC, that could be exercised by a hypothetical lien creditor of FRC at the time of the commencement of the case.

27.    By virtue of the provisions of 11 U.S.C. § 544(a)(2), Plaintiff has the rights and powers, including the rights and powers to avoid any transfer of property of FRC or any obligation incurred by FRC, that could be exercised by a hypothetical execution creditor of FRC at the time of the commencement of the case.

///

28.    By virtue of the provisions of 11 U.S.C. § 544(b)(1), Plaintiff has the rights and powers, including the rights and powers to avoid any transfer of property of FRC or any obligation incurred by FRC, that could be exercised by an actual creditor holding an allowable unsecured claim against FRC.  Plaintiff is informed and believes that Wells Fargo Bank is such a creditor.

29.    Pursuant to California Civil Code § 3439.06(a), all transfers alleged herein to have occurred prior to FRC's bankruptcy are deemed to have occurred on August 1, 2008, which was the date on which the deed to Bear, by which it acquired legal title to the Property, was recorded.

### FIRST CLAIM FOR RELIEF

### 11 U.S.C. § 544; Calif. Civil Code § 3439.04(a)(1)

### Avoidance of Fraudulent Transfer Against Bear

30.    Plaintiff realleges and incorporates by this reference each and every allegation of paragraphs 1-29.

31.    Plaintiff is informed and believes, and thereupon alleges, that the closing of escrow on the Property with title being taken in the name of Bear effectuated a transfer of FRC's equitable ownership interest in the Property to Bear.

32.    Plaintiff is informed and believes, and thereupon alleges, that upon close of escrow, FRC acquired the Property, but allowed title to be taken in the name of Bear.  The act of allowing title to be taken in the name of Bear effected a transfer of the Property from FRC to Bear.

33.    Plaintiff is informed and believes, and thereupon alleges, that the payments totaling $2,803,527.98 by FRC in connection with the acquisition of the Property effected a transfer of those funds to Bear, and that the Property is the proceeds of those funds.

34.    Plaintiff is informed and believes, and thereupon alleges, that the Assignment constituted a transfer of FRC's interest in the Property to Bear.

35.    Plaintiff is informed and believes that one or more of the transfers described in paragraphs 31-34 was made with an intent to hinder, delay or defraud one or more creditors of

FRC.  In support of this allegation, Plaintiff alleges on information and belief that the transfer(s) involved a transfer to an insider; that FRC retained possession and control of the Property after Bear took title to it; that FRC removed or transferred significant other of its assets to or for the benefit of Rodgers; that FRC received no value in exchange for the transfer(s); that FRC became insolvent shortly after the transfer was made; that the transfer(s) occurred shortly before or shortly after a substantial debt was incurred; and that FRC was forced to file Chapter 7 bankruptcy less than four years after the transfer(s) to Bear.

36.    By reason of the foregoing, the transfer(s) described in Paragraphs 31-34 hereof are voidable pursuant to 11 U.S.C. § 544 and California Civil Code §3439.04(a)(1).

Based on the foregoing, Plaintiff prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**

**11 U.S.C. § 544; Calif. Civil Code § 3439.04(a)(2)**

**Avoidance of Fraudulent Transfer Against Bear**

37.    Plaintiff realleges and incorporates by this reference each and every allegation of paragraphs 1-34 as though fully set forth herein.

38.    Plaintiff is informed and believes that FRC made some or all of the transfers described in paragraphs 31-34 without receiving a reasonably equivalent value in exchange.

39.    Plaintiff is informed and believes that FRC was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with FRC was an unreasonably small capital.

40.    In the alternative, Plaintiff is informed and believes that FRC intended to incur, or reasonably should have believed that it would incur, debts that would be beyond FRC's ability to pay as such debts matured.

41.    By reason of the foregoing, the transfers described in paragraphs 31-34 are voidable pursuant to 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(2).

Based on the foregoing, Plaintiff prays for relief as set forth below.

///

///

### THIRD CLAIM FOR RELIEF

### 11 U.S.C. § 544; Calif. Civil Code § 3439.05

### Avoidance of Fraudulent Transfer Against Bear

42.     Plaintiff realleges and incorporates by this reference each and every allegation of paragraphs 1-34 and 38 as though fully set forth herein.

43.     Plaintiff is informed and believes that Debtor was insolvent on the date that the transfers described in paragraphs 31-34 were made, or became insolvent as a result of the transfers described in paragraphs 31-34.

44.     By reason of the foregoing, the transfers described in paragraph 31-34 are voidable pursuant to 11 U.S.C.  § 544 and California Civil Code § 3439.05.

Based on the foregoing, Plaintiff prays for relief as set forth below.

### FOURTH CLAIM FOR RELIEF

### 11 U.S.C. § 549

### Avoidance of Post-Petition Transfer Against GE/General Electric

45.     Plaintiff realleges and incorporates by this reference each and every allegation of paragraphs 1-29 as though fully set forth herein.

46.     Plaintiff is informed and believes, and thereupon alleges, that upon close of escrow for the acquisition of the Property, FRC was the equitable owner of the Property.  At the time of its bankruptcy petition, FRC's interest in the Property was property of FRC.

47.     Plaintiff is informed and believes, and thereupon alleges, that after the close of escrow for the acquisition of the Property, Bear was holding title to the Property as a constructive trustee for the benefit of FRC.  At the time of its bankruptcy petition, FRC's interest in the Property was property of FRC.

48.     Pursuant to 11 U.S.C. § 541, FRC's pre-petition interest in the Property became property of the FRC bankruptcy estate on April 30, 2012, when its Chapter 7 petition was filed.

49.     After April 12, 2012, but prior to November 29, 2012, GE initiated foreclosure proceedings against the Property by causing a notice of default and a notice of trustee's sale to be recorded in Alameda County, regarding the Property.

50.     On or about November 29, 2012, an assignment of GE's interest in the deed of trust against the Property to General Electric was recorded in Alameda County.

51.     On or about November 29, 2012, General Electric foreclosed on the Property without having obtained leave from the bankruptcy court or relief from the automatic stay to do so.   At the foreclosure sale, General Electric acquired title to the Property, thus effectuating a post-petition transfer of FRC's interest in the Property in violation of the Bankruptcy Code.

52.     Pursuant to 11 U.S.C. § 549, Plaintiff is entitled to avoid any post-petition transfer of property of the Estate which was not approved by the bankruptcy court or otherwise permitted by law.

53.     By reason of the foregoing, the foreclosure of the Property by GE was an avoidable transfer pursuant to 11 U.S.C. § 549.

Based on the foregoing, Plaintiff prays for relief as set forth below.

**FIFTH CLAIM FOR RELIEF**

**11 U.S.C. § 362**

**Declaratory Relief Against GE/General Electric**

54.     Plaintiff realleges and incorporates by this reference each and every allegation of paragraphs 45-51 as though fully set forth.

55.     The acts of GE and General Electric to initiate and complete a foreclosure of the Property were in violation of the automatic stay of 11 U.S.C.  § 362(a)(3), in that they were acts to obtain possession of property of the Estate or property from the Estate or to exercise control over property of the Estate.

56.     Because the acts of GE/General Electric to initiate and complete a foreclosure of the Property were in violation of the automatic stay, they were void.

57.     Plaintiff is entitled to a declaration from this Court that the foreclosure was ineffective to deprive the Estate of its interest in the Property, and that whatever interest the Estate had in the Property prior to the foreclosure is still property of the Estate.

Based on the foregoing, Plaintiff prays for relief as set forth below.

///

## SIXTH CLAIM FOR RELIEF

### 11 U.S.C. § 550

### Recovery of Avoidable Transfers Against GE/General Electric

58.     Plaintiff realleges and incorporates by this reference each and every allegation of paragraphs 1-53 as though fully set forth.

59.     Based on the First, Second, and/or Third Claims for Relief alleged above, one or more of the transfers described in paragraphs 31-34 are avoidable transfers.

60.     Based on the Fourth Claim for Relief alleged above, the foreclosure of the Property by GE/General Electric was an avoidable transfer.

61.     GE is an initial transferee of one or more of the transfers described in paragraphs 31-34 or is a subsequent transferee of Bear, with respect to the Property.

62.     Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to a judgment against Defendant GE  either adjudicating that the Property is property of the Estate, or  awarding Plaintiff the value of the Property.

Based on the foregoing, Plaintiff prays for relief as set forth below.

///

///

///

///

///

///

///

///

///

///

///

///

///

WHEREFORE, Plaintiff prays for relief as follows:

      a.      On the First, Second, and/or Third, Claims for Relief, a judgment avoiding one or more of the transfers described in paragraphs 31-34;

      b.      On the Fourth Claim for Relief, a judgment avoiding the foreclosure of the Property by GE/General Electric;

      c.      On the Fifth and Sixth Claims for Relief,  a judgment determining that the Property is property of the FRC bankruptcy estate or awarding Plaintiff the value of the Property;

      d.      Awarding costs in favor of the Trustee;

      e.      For such other and further relief as the Court may deem appropriate.

Dated: April 25, 2014

                           HUGHES LAW CORPORATION


                           By   /S/ Gregory J. Hughes
                           Gregory J. Hughes, Attorney for
                           Michael D. McGranahan, Chapter 7 Trustee